UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

JOHN DOE and JANE DOE

    Plaintiffs,

v.                                                CIVIL ACTION NO. 3:24-cv-344
                                                     TRIAL BY JURY DEMANDED

MARRIOTT INTERNATIONAL, INC.

**SERVE:**
CT CORPORATION SYSTEM
160 MINE LAKE COURT, SUITE 200
RALEIGH, NC 27615

WATERMARK CAPITAL PARTNERS, LLC d/b/a/
CHARLOTTE MARRIOTT CITY CENTER

**SERVE:**
COGENCY GLOBAL, INC.
600 SOUTH SECOND STREET, SUITE 404
SPRINGFIELD, IL 62704-2542

PARKING MANAGEMENT COMPANY

**SERVE:**
CT CORPORATION SYSTEM
160 MINE LAKE COURT, SUITE 200
RALEIGH, NC 27615

    **Defendants.**

## COMPLAINT

    COMES NOW the Plaintiffs, John Doe and Jane Doe, by counsel, and respectfully submit their Complaint for damages and makes the following averments:

# PARTIES

1. Plaintiff John Doe is a citizen of Mississippi. John Doe has filed this Complaint under a pseudonym, pending a ruling from this court on John Doe and Jane Doe's Motion to Proceed Under Pseudonym that was filed contemporaneously with this initial pleading.

2. Plaintiff Jane Doe is the wife of John Doe and is a citizen of Mississippi. Jane Doe filed this Complaint under a pseudonym, pending a ruling from this court on John Doe and Jane Doe's Motion to Proceed Under Pseudonym that was filed contemporaneously with this initial pleading.

3. Watermark Capital Partners, LLC d/b/a Charlotte Marriott City Center (hereinafter referred to as "Charlotte Marriott City Center") is a Delaware limited liability company with its principal place of business in Chicago, Illinois, authorized to do business in the state of North Carolina. At all times relevant herein, Defendant Charlotte Marriott City Center owned the Charlotte Marriott City Center Hotel located at 100 W Trade Street Charlotte, North Carolina 28202 (hereinafter referred to as the "Hotel" or the "Charlotte Marriott City Center Hotel").

4. Marriott International, Inc. (hereinafter referred to as "Marriott International") is a Delaware corporation with its principal place of business in Bethesda, Maryland and is authorized to do business in the state of North Carolina. At all times relevant herein, Marriott International operated and managed the Hotel.

5. Parking Management Company, LLC (hereinafter referred to as "Parking Management") is a Delaware limited liability company with its principal place of business in Nashville, Tennessee and which is authorized to do business in the state of North Carolina. At all times relevant herein, Parking Management owned, operated, and managed the parking garage

attached to the subject Hotel (hereinafter referred to as the "Parking Garage"). (The Parking Garage and Hotel will hereinafter be collectively referred to as the subject "Premises").

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this Action pursuant to 28 U.S.C. § 1332 as the amount in controversy exceeds $75,000 and there exists complete diversity of citizenship among the parties.

7. Venue is properly laid in this Court pursuant to 28 U.S.C. § 1391 because the events and omissions giving rise to this action happened in this judicial district.

## FACTUAL BACKGROUND

8. This action arises from the violent sexual assault and robbery of Plaintiff John Doe at the Charlotte Marriott City Center Hotel on April 8, 2022.

9. John Doe has honorably served his country as a member of the United States Armed Forces for more than twenty years. At all times relevant herein, John Doe had the ranking of Major in the United States Air Force.

10. The weekend of April 8, 2022, John Doe was travelling from his home in Mississippi to Orlando, Florida for two days of mandatory Air Force training.

11. On Thursday, April 7, 2022, while attempting to travel to his mandatory Air Force training, a series of flight cancellations led to John Doe getting stuck at the Charlotte Douglas International Airport.

12. Due to the flight cancellations, the Air Force excused John Doe's attendance at the training and gave him permission to travel home to his family in Mississippi.

13. John Doe immediately attempted to find any flight to return home to Mississippi, in an effort to make it home to his family and in time to attend a father-daughter dance at his church with his daughter.

14. John Doe was placed on stand-by for a flight to Mississippi on the night of April 7, 2022, but this flight was cancelled just before boarding time. Due to these flight cancellations, John Doe was unable to depart Charlotte the evening of April 7, 2022, and instead had to spend the night in Charlotte before flying out on the first available flight to Mississippi.

15. Due to his frequent travel for work, John Doe routinely stayed at and was loyal to Marriott properties. As of April 8, 2022, he had Titanium Elite status with Marriott.

16. John Doe booked a room at the Charlotte Marriott Center City Hotel because of his loyalty to and trust in Marriott to keep him safe and comfortable in an unfamiliar city.

17. While waiting to be picked up by a ride share service at Charlotte Douglas International Airport to head to the Charlotte Marriott City Center Hotel, John Doe ran into a friend and former Green Beret.

18. John Doe and his friend shared a ride share service to the Charlotte Marriott City Center Hotel.

19. The Charlotte Marriott City Center Hotel is located in downtown Charlotte, North Carolina in an area subject to high foot-traffic and a large homeless population.

20. Upon arriving at the Charlotte Marriott City Center Hotel John Doe and his friend observed homeless individuals loitering outside of the hotel.

21. As John Doe exited his car and was entering the property, John Doe was approached by an aggressive panhandler who asked John Doe for money while he was trying to unload his

luggage right outside the door of the Charlotte Marriott City Center Hotel. This panhandler was standing right next to the Charlotte Marriott City Center Hotel valet and other hotel personnel.

22. Marriott International, Charlotte Marriott City Center Hotel, and Parking Management knew or should have known years prior to and at the time of John Doe's assault that the City of Charlotte, North Carolina was one of the most dangerous cities, of any size, across America.

23. Statistics from the Charlotte-Mecklenburg Police Department ("CMPD") reveal the prolific crime rates in the City of Charlotte in the years prior to John Doe's attack.

   i. In 2018, CMPD responded to 4,090 aggravated assaults, 308 rapes, 1,778 robberies, 5,387 burglaries, and 57 homicides.[1]

   ii. In 2019, CMPD responded to 4,559 aggravated assaults, 288 rapes, 2,000 robberies, 5,428 burglaries, and 108 homicides.[2]

   iii. In 2020, CMPD completed 14,568 total arrests (3,050 of which were arrests for violent crimes) and had to confiscate 2,265 firearms off the street.[3]

   iv. Finally, in 2021, the year prior to John Doe's assault and robbery, CMPD completed 13,792 arrests (2,914 of which were arrests for violent crimes) and confiscated 2,999 firearms off the street).[4]

24. According to the most recently published data by U.S. News the violent crime rate in Charlotte, North Carolina has been higher than the national average every year since 2007.[5]

---

[1] https://www.charlottenc.gov/files/assets/police/v/1/documents/reports/cs18yrend-sum.pdf
[2] https://www.charlottenc.gov/files/assets/police/v/1/documents/reports/cs19yrend-sum.pdf
[3] https://www.charlottenc.gov/files/assets/police/v/1/documents/reports/cmpd_eoy_2020.pdf
[4] https://www.charlottenc.gov/files/assets/police/v/1/documents/reports/cmpd_eoy_2021.pdf
[5] https://realestate.usnews.com/places/north-carolina/charlotte/crime

25. In 2020, the most recently published available data from U.S. News, Charlotte had a higher violent crime rate per capita than New York City, NY, Los Angeles, CA, and Chicago, IL.[6]

26. In addition to the publicly available data about crime rates in the City of Charlotte generally, Marriott International, Charlotte Marriott City Center Hotel, and Parking Management knew or should have known that patrons of the subject Premises could be the targets of serious crimes.

27. The Charlotte-Mecklenburg Police Department responded to 9-1-1 calls at the subject premises 85 times between July 2017 and July 2022 alone. A log of the 9-1-1 calls at the subject premises are attached hereto as <u>Exhibit A</u>.

    a. Twenty-nine of the 9-1-1 calls between July 2017 and July 2022 were related to thefts or trespass to real property at the subject Premises, putting Marriott International, Charlotte Marriott City Center Hotel, and Parking Management on notice that thefts like the robbery John Doe suffered were reasonably foreseeable.

    b. Fifteen of the 9-1-1 calls between July 2017 and July 2022 were related to assaults, including instances of sexual assault ranging from forcible fondling to forcible sodomy, putting Marriott International, Charlotte Marriott City Center Hotel, and Parking Management on notice that assaults like the sexual assault John Doe suffered were reasonably foreseeable.

28. In addition to knowing about the rampant violent crime in the City of Charlotte, as well as the history of violent crime at the Premises itself, Marriott International, Charlotte Marriott City Center Hotel, and Parking Management were aware that Jermaine Peay specifically posed a risk to guests of the Premises.

---

[6] Id.

29. Upon information and belief, as of April 8, 2022, Jermaine Peay had previously trespassed on the Premises for the purposes of burglarizing and/or assaulting guests of Premises prior to the burglary and sexual assault perpetrated against John Doe.

30. On the evening of April 7, 2022, John Doe retired to his hotel room alone and went to sleep.

31. Unbeknownst to John Doe, the self-closing and self-locking door to his guestroom was not functioning properly, and the door to his room did not properly latch shut or lock.

32. The door to John Doe's guestroom was equipped with electronic sensors that transmit an electronic record to Marriott International and Charlotte Marriott City Center Hotel when the door is open or closed.

33. Accordingly, Marriott International and Charlotte Marriott City Center Hotel knew or should have known that the self-closing door was malfunctioning and not properly closing prior to and during John Doe's stay at the Hotel.

34. Additionally, Marriott International and Charlotte Marriott City Center Hotel knew or should have known that John Doe's hotel room was open and unsecure for the hours leading up to his sexual assault and robbery.

35. Late that night, or during the early hours of April 8, 2022, John Doe was woken up to an assailant performing oral sex on him without his consent.

36. The assailant, Jermaine Peay, had put John Doe's penis in his mouth while John Doe slept, and had been violently thrashing his head up and down with John Doe's penis in his mouth.

37. John Doe had never met, seen, or otherwise interacted with Jermaine Peay prior to waking up to find Peay sexually assaulting him in his hotel room.

38. John Doe howled in terror and lashed out to punch Jermaine Peay and throw him off of John Doe.

39. Peay ran away stealing John Doe's wallet, a pair of pants, and a shirt, on his way out.

40. After his assailant fled, John Doe called the front desk of the Charlotte Marriott City Center Hotel to report the attack.

41. A Charlotte Marriott City Center Hotel staff member advised John Doe that she would call the police.

42. The Charlotte Marriott City Center Hotel staff member at the front desk admitted to John Doe that "we know who he is" in reference to the identity of John Doe's attacker.

43. Upon information and belief, Jermaine Peay was not a guest of the Charlotte Marriott City Center Hotel and did not have any form of key card that would have granted an invitee of the property access to portions of the Hotel that should have been secured.

44. Upon information and belief, prior to robbing and sexually assaulting John Doe, Jermaine Peay had trespassed onto the Premises through the Parking Garage, entered the Hotel, and traversed up multiple floors of the Hotel to John Doe's room in the middle of the night without being questioned or apprehended by any security officials.

45. Marriott International, Charlotte Marriott City Center Hotel, and Parking Management knew that Jermaine Peay had trespassed onto the Premises the night of April 7, 2022, or early hours of April 8, 2022, prior to John Doe's assault, but failed to notify police before Peay robbed and sexually assaulted John Doe.

46. When Hotel security arrived at his room, John Doe reported the details of his assault, and the hotel security officer advised John Doe to take a shower to mitigate the risk of contracting a disease such as AIDS-HIV.

47. Police arrived at John Doe's hotel room shortly after his shower to commence an investigation.

48. The Charlotte Mecklenburg Police Department immediately realized that the door to John Doe's hotel room would not properly latch, leaving John Doe completely unsecured leading up to the time of his assault.

### COUNT I - NEGLIGENCE – PREMISES LIABILITY
### (On behalf of John Doe against Marriott International, Charlotte Marriott City Center, and Parking Management)

49. Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation asserted in the preceding and following paragraphs, including each and every factual and legal allegation hereinbefore and hereinafter alleged, and hereby re-adopt and re-allege each such allegation.

50. At all relevant times Marriott International, Charlotte Marriott City Center Hotel, and Parking Management were the owners or operators of the subject Premises and had a nondelegable duty to keep the Premises safe from foreseeable harms.

51. At all relevant times, John Doe was a guest, invitee, and patron on the Premises.

52. At all relevant times, Marriott International and Charlotte Marriott City Center Hotel were in a special relationship of innkeeper-guest with Plaintiff John Doe. As such, Marriott International and Charlotte Marriott City Center owed John Doe a duty to protect him from any foreseeable criminal acts.

53. Marriott International, Charlotte Marriott City Center, and Parking Management knew or should have known about the dangerous conditions inside and immediately around the Premises but failed to take appropriate action to protect John Doe from harm.

54. It was reasonably foreseeable that a violent act, such as an assault and robbery would be committed on the Premises.

55. Marriott International, Charlotte Marriott City Center Hotel, and Parking Management, knew or should have known that Defendant Peay was on the premises and that John Doe was vulnerable to criminal conduct including sexual assault and robbery by Peay.

56. Marriott International, Charlotte Marriott City Center Hotel, and Parking Management had a duty to provide security both at the Hotel and in the Parking Garage for the safety of their guests.

57. Security at a hotel in downtown Charlotte was reasonably necessary to protect John Doe who enjoyed a special innkeeper-guest relationship with Marriott International and Charlotte Marriott City Center.

58. Marriott International, Charlotte Marriott City Center Hotel, and Parking Management breached their duty of reasonable care by failing to:

> i. Hire sufficient Hotel security;
>
> ii. Hire security personnel to specifically secure the Parking Garage;
>
> iii. Implement a security protocol to protect individuals who were staying at or visiting the Premises;
>
> iv. Secure doors from outside leading into the Hotel, including without limitation locking any doors to the outside, or requiring a key card to access doors to the outside;

    v. Secure the entrance to the Parking Garage, including without limitation installing a gate at the entrance of the parking garage, or requiring a key card to access the Parking Garage from the outside;

    vi. Provide adequate security to keep Hotel guests safe;

    vii. Monitor common areas of the hotel through adequate security personnel or sufficient surveillance cameras;

    viii. Screen individuals entering the subject Parking Garage and Hotel;

    ix. Require key card access to any area of the Hotel;

    x. Install exterior security monitoring to ward off potential criminal activity;

    xi. Hire sufficient security personnel to patrols hallways or monitor electronic systems to ensure guest room doors at the hotel are secure overnight; and

    xii. Administratively secure the property in the form of collecting and reporting criminal activity.

59. As a direct and proximate result of the foregoing acts, Plaintiff suffered and continues to suffer pain and suffering, physical pain, mental anguish, pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, inconvenience, post-traumatic stress disorder resulting in physically manifested injuries including anxiety, depression, sleep disorders, nightmares, psychological injuries, physical and mental sickness, and bodily injuries. Plaintiff was prevented and will continue to be prevented from performing his daily activities and obtaining the full enjoyment of life and has sustained and continues to sustain loss of earnings and earning capacity.

## COUNT II – NORTH CAROLINA DECEPTIVE TRADE PRACTICES ACT
## N.C.G.S. § 75-1.1
### (On behalf of John Doe against Marriott International and Charlotte Marriott City Center)

60. Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation asserted in the preceding and following paragraphs, including each and every factual and legal allegation hereinbefore and hereinafter alleged, and hereby re-adopt and re-allege each such allegation.

61. At all times relevant herein, Marriott International and Charlotte Marriott City Center Hotel expressly advertised to customers that the Charlotte Marriott City Center Hotel featured self-closing doors in all guest rooms and suites.

62. By offering to sell hotel rooms in the state of North Carolina, Marriott International and Charlotte Marriott City Center Hotel impliedly warranted to consumers that the Premises and guest rooms would be fit for their intended use.

63. By selling a hotel room with a defective door, Marriott International and Charlotte Marriott City Center Hotel breached their implied warranty of fitness for a particular purpose.

64. Marriott International and Charlotte Marriott City Center Hotel committed an unfair and deceptive trade practice when they falsely advertised to John Doe and other consumers that the Hotel had self-locking doors in guest rooms and suites.

65. By advertising self-locking doors as a featured amenity at the Premises, Marriott International and Charlotte Marriott City Center misled John Doe and/or created a likelihood of deception for John Doe and other similar consumers.

66. The conduct of Marriott International and Charlotte Marriott City Center Hotel set forth in this Complaint affected commerce.

67. Marriott International and Charlotte Marriott City Center Hotel's advertisements and representations on their website and Bonvoy app, surrounded and/or affected their sales.

68. Marriott International and Charlotte Marriott City Center Hotel's advertisements and representations on its website induced the sale of a hotel room to John Doe on April 7, 2022.

69. Marriott International and Charlotte Marriott City Center Hotel have a duty, like all hotels operated in North Carolina to keep the premises reasonably safe, to provide reasonable security, and to protect their patrons from the reasonably foreseeable criminal conduct of third parties.

70. John Doe relied on Marriott International and Charlotte Marriott City Center Hotel to keep the Premises in a reasonably safe condition, and further relied on the express representations on its website and Bonvoy app when he made the decision to purchase a hotel room on April 7, 2022.

71. As a result of Marriott International and Charlotte Marriott City Center Hotel's unfair failures to (1) provide functional self-closing and locking doors as promised on their website, and (2) maintain the guestrooms in a reasonably safe manner including without limitation by providing John Doe a guestroom with a defective door John Doe suffered traumatic injuries.

72. As a direct and proximate result of the foregoing acts, Plaintiff suffered and continues to suffer pain and suffering, physical pain, mental anguish, pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, inconvenience, post-traumatic stress disorder resulting in physically manifested injuries including anxiety, depression, sleep disorders, nightmares, psychological injuries, physical and mental sickness, and bodily injuries. Plaintiff was prevented and will continue to be prevented from performing his daily activities and

obtaining the full enjoyment of life and has sustained and continues to sustain loss of earnings and earning capacity.

### COUNT III – NEGLIGENCE PER SE
**(On behalf of Plaintiff John Doe Against Marriott International and Charlotte Marriott City Center**

73. Plaintiffs hereby incorporates by reference, as if fully set forth herein, each and every allegation asserted in the preceding and following paragraphs, including each and every factual and legal allegation hereinbefore and hereinafter alleged, and hereby re-adopt and re-allege each such allegation.

74. Chapter 11, of the Code of Ordinances of the City of Charlotte, North Carolina is applicable to all dwellings, rooming houses, and lodging establishments within the jurisdiction of the city regardless of when such units were constructed, altered, repaired, or improved.

75. The Charlotte Marriott City Center is a lodging establishment as defined in Chapter 11 Article I Section 11-4.

76. Chapter 11 Article III Section 11-77(a) requires: "all doors providing access to any place of habitation shall have operable locks, and, in the case of dwellings and dwelling units, the owner or operator shall provide a change of locks or keys for new tenants."

77. Chapter 11 Article 11 Article III Section 11-77(a) is an ordinance intended and designed to prevent injury to persons and property.

78. Marriott International and Charlotte City Marriott City Center willfully, wantonly, or intentionally violated Chapter 11 Article III Section 11-77(a) because the lock on the door to John Doe's hotel room was not operable.

79. Marriott International and Charlotte City Marriott City Center's failure to have operable locks on the door providing access to John Doe's hotel room proximately caused each and every injury set forth in this Complaint.

## COUNT IV – LOSS OF CONSORTIUM
### (On behalf of Plaintiff Jane Doe against all Defendants)

80. Plaintiffs hereby incorporates by reference, as if fully set forth herein, each and every allegation asserted in the preceding and following paragraphs, including each and every factual and legal allegation hereinbefore and hereinafter alleged, and hereby re-adopt and re-allege each such allegation.

81. The negligence and intentional torts set forth in Counts I - III proximately caused Plaintiff Jane Doe to lose the consortium of her spouse John Doe.

82. John Doe and Jane Doe were legally married at the time of John Doe's injury.

83. The marital relationship between John Doe and Jane Doe included society, affection, household services, companionship, and sexual relations.

84. Jane Doe has suffered the loss and disruption of marital services, society, affection, companionship, or sexual relations between a husband and wife as a result of the Defendants' negligence and intentional torts as set forth in Counts I – III.

## PUNITIVE DAMAGES

85. Plaintiffs hereby incorporates by reference, as if fully set forth herein, each and every allegation asserted in the preceding and following paragraphs, including each and every factual and legal allegation hereinbefore and hereinafter alleged, and hereby re-adopt and re-allege each such allegation.

86. The facts set forth above evidence wanton, reckless, malicious conduct on the part of the Defendants.

87. The foregoing conduct justifies punitive damages to punish the Defendants for their extreme conduct and deter the Defendants and other similar situated from engaging in similar conduct.

WHEREFORE, Plaintiffs John Doe and Jane Doe move this Court for judgment against the Defendants in the amount of FORTY MILLION DOLLARS ($40,000,000) in compensatory damages and ONE HUNDRED TWENTY MILLION DOLLARS ($120,000,000) in punitive damages, plus pre-judgment interest from April 7, 2022 and any further relief this Court deems just and appropriate.

**PLAINTIFFS DEMAND A TRIAL BY JURY.**

Respectfully submitted,

**JOHN DOE and JANE DOE, Plaintiffs**

Dated:  March 26, 2024

/s/ Jeffrey A/ Breit
Jeffrey A. Breit, Esq. (NCSB No. 17820)
Lee Adair Floyd, Esq.*
Sarah G. Sauble, Esq.*
BREIT BINIAZAN, PC
2100 East Cary Street, Ste. 310
Richmond, VA  23223
Telephone: 757-622-6000
Facsimile:  757-670-3939
Jeffrey@bbtrial.com
Lee@bbtrial.com
Sarah@bbtrial.com
*Counsel for Plaintiffs*
*\*Pro Hac Vice forthcoming*